STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT COURT

NO. 2007-259CV



KENNA LANE as parent and natural guardian of
David Wagers, a minor
    Plaintiff,
vs.

WAL-MART STORES INC. and
JOHN DOE
    Defendants.

## COMPLAINT FOR PERSONAL INJURY

COMES NOW the Plaintiff, Kena Lane as parent and natural guardian of her minor son, David Wagers, by and through her attorneys Brigitte Ursula Lotze and Jerry J. Hamilton, and for her complaint states as follows:

1. Plaintiff and her minor son, David Wagers, are residents of Taos County, New Mexico.

2. Defendant Wal-Mart Stores Inc. is a foreign Corporation licensed and permitted to do business in New Mexico.

3. Defendant Wal-Mart Stores Inc.(hereafter Wal-Mart) has designated The Corporation Service Company as its registered agent for service of process.

4. Defendant John Doe's identity is unknown at present however Plaintiff believes on reasonable grounds that he is a resident of Taos County, N.M. and is likely to be an employee of Defendant Wal-Mart. He will be renamed and served with process when he is identified.

1



5. The incident complained of herein occurred in Taos County, New Mexico on or about February 20, 2007 on property owned and controlled by Defendant.

6. On or about February 20, 2007, Defendant Wal-Mart was engaged in the business of retail sales to members of the general public at a store building located at 926 Paseo Del Pueblo Sur in Taos, New Mexico.

7. On or about February 20, 2007, Defendant owned and controlled the land at 926 Paseo Del Pueblo Sur in Taos, New Mexico on which Defendant Wal-Mart operated this retail store.

8. At all times herein mentioned Plaintiff's minor son was a member of the general public who Defendant anticipated would enter the premises as a business invitee.

9. On the date of the incident herein described Wal-Mart provided public restrooms for men and for women to be used by persons who entered its store premises but provided separate restrooms for its employees.

10. Wal-Mart located the public men's restroom at the rear of its store building, adjacent to its employee lounge and near the lay-away desk and the entrance to its offices.

11. This restroom had one door for entrance and exit which closed automatically.

12. Access to this men's room was from a short hallway which had a security camera mounted in the ceiling within a dome-like cover.

13. Wal-Mart's public men's room was equipped with two (2) urinals and two (2) commodes as well as lavatories and a counter for infant diaper changes.

14. Each of the two commodes was located within a separate stall with a latch which enabled the occupant to secure the door. The juvenile sized urinal was separated from the adult

2

sized urinal by a small partition.

15. The men's room door opens inward. The toilet fixtures arranged from the right side of the room near the door to the far left side were: first an adult sized urinal, then a small partition between it and a juvenile size urinal, then the wall of the stall containing the first commode, then a wall separating it from the second commode, then the rear wall of the men's room.

16. David Wagers (hereafter David) was thirteen (13) years old and was a student in the seventh grade on February 20, 2007. He and his younger brother and his mother were staying temporarily at the Community Against Violence residential facility located a few blocks from the Wal-Mart store in question.

17. David and a companion went to the Wal-Mart store after school.

18. After David and his friend looked at various merchandise in the store, his friend's mother came and picked him up and David decided to use the restroom before walking home.

19. David entered the men's restroom, going into the last stall, at the far end of the restroom, latching the door closed behind him.

20. While David was seated on the commode he noticed a hole in the common wall which separated the stall he occupied from the adjoining stall.

21. Looking closer at the hole in the wall he noticed that he was being watched through this hole by someone in the adjoining stall who continued to stare at him in spite of being caught in this act of indecency.

22. The man watching David from the adjoining stall will be referred to as John Doe for purposes of this suit.

3

23. David was alarmed and upset and felt threatened from being viewed in this private and embarrassing circumstance by a man who refused to stop watching him.

24. The wall separating the two stalls did not extend to the floor but stopped some distance from the floor leaving an open space through which David could see the man's right shoe, his right ankle which had a tatoo and his pants which he had lowered.

25. When David asked John Doe to stop watching him and told him his conduct was improper, John Doe became angry and abusive; he said that he had seen David stealing and said he was going to hurt David and that he would be waiting for him outside the men's room.

26. David was alone, had no family or friends with him in the store, he knew no one in the store and he had no cell phone to call anyone for help.

27. David waited a long time in the stall, not knowing what to do because he was afraid that he would be assaulted while in the store, or followed home and assaulted or abducted after he left the store.

28. David was humiliated and terrorized by this event and when he exited the men's room he moved cautiously to the front of the store to leave, while looking to see if anyone there might be the perpetrator.

29. When David was outside the store, he ran as fast as he could to the CAV, looking behind him to see if he was being followed.

30. David told his mother what had happened to him at the Wal-Mart store and the Taos Police was called and a report was made to the officer who responded.

31. The officer met with the Wal-Mart store manager, Alvin Berry, and told him what had been reported by David. Mr. Berry told the officer that peep holes had been made in the

men's room walls previously and that they had a hard time keeping them repaired because as soon as the walls were repaired, the holes would be made again.

32. Mr. Berry then told a Wal-Mart employee to go and fix the hole.

33. Wal-Mart has an extensive system of surveillance cameras operating within the store which it uses to protect its inventory and for general security purposes.

34. Wal-Mart uses the tapes from the security cameras to prosecute individuals for theft of its merchandise.

35. Wal-Mart was notified of this event within hours of its occurrence and the investigating officer asked Wal-Mart for the tape from the camera which was located in the hallway just outside the men's restroom, yet Wal-Mart never provided the tape to the police.

36. Wal-Mart had a duty to make its premises safe for visitors yet knowingly maintained this men's room as a place of danger to the safety and security of its customers and visitors and a special danger to young boys.

37. The peep hole used by John Doe to spy on David was only one of the holes available in this customer men's restroom for spying on bathroom users.

38. The place from which John Doe engaged in these acts, the middle stall between the juvenile size urinal and the adjoining stall, had peep holes to enable the viewer to spy on the person using the juvenile size urinal as well as the person in the adjoining stall.

39. Following this event on February 20, 2007, the peep holes in the men's room walls have not only remained, in fact an additional peep hole has been made for viewing the occupant of the last stall, the one where John Doe spied on David.

40. Vulgar and sexual references have been written on the walls of the stalls. The walls

5

are constructed of a wood composite and are painted over periodically, however Wal-Mart has allowed the peep holes to remain.

41. As of the date of the filing of this Complaint, June 27, 2007 Wal-Mart is allowing John Doe and any other person who desires to engage in this type conduct to sit in privacy in the first stall and watch men and boys urinate using the peephole on one wall of the stall and to watch the actions of the occupant of the adjoining stall through the peep hole in the other wall.

42. Wal-Mart continually loses some of its inventory from customer theft. Wal-Mart maintains that some customers, in order to steal from Wal-Mart, take items into the restrooms where they hide the items under their clothing before leaving the store.

43. Plaintiff is informed that Wal-Mart has an employee in Security whose job duties are to dress and act like a customer and roam the store, watching for suspicious activities and to apprehend anyone he observes stealing.

44. Plaintiff believes on reasonable grounds that John Doe is or was a Wal-Mart employee whose job was to watch customers to catch them stealing and that the peep holes are for employee use.

45. Wal-Mart's management either paid John Doe to spy on customers and facilitated his actions by maintaining the peep holes for him or Wal-Mart management has allowed and enabled John Doe to spy on David and its customers by failing to take reasonable steps to prevent the peep holes.

46. Wal-Mart knew that someone was re-opening and using the peep holes after its reported occasional efforts to plug them up.

47. Wal-Mart knew that it was allowing someone to continue to view young boys while

6

urinating as well as viewing the occupant of the adjoining stall and that the actions of the perpetrator were illegal and suggestive of a dangerous and unpredictable personality.

48. Wal-Mart knew that this men's room was unsafe for customers and children, and Wal-Mart could reasonably foresee the actions of John Doe on February 20, 2007 or expect circumstances even more tragic.

49. Wal-Mart breached its duty to make its premises safe and was negligent and caused this dangerous condition and John Doe's conduct.

50. In the alternative, Wal-Mart actively participated in John Doe's conduct.

51. John Doe intentionally inflicted emotional harm on David Wagers.

52. Wal-Mart has provided protection to John Doe which has enabled him to continue his peeping actions by its failure to investigate the identity of the perpetrator before this incident and after this incident or cooperate with the town police or provide the tape of the area at the time of the events or even to prevent the continued use of the peepholes.

53. As a direct and proximate result of the intentional acts and the acts of negligence of Wal-Mart, Plaintiff's minor son has suffered fear and trepidation and emotional harm for which he has required care and counseling.

54. The actions of John Doe were malicious, willful, reckless and wanton. The actions of Wal-Mart were wilful and reckless and indifferent to the conduct of John Doe. Wal-Mart consciously disregarded the risk of danger to David.

55. Wal-Mart knew on February 20, 2007 that it possessed a video tape from a security camera which would reveal the man whose improper and illegal conduct had been reported as having victimized David Wagers and knew that the incident coupled with its own permissive

7

conduct was the basis for a claim or lawsuit against Wal-Mart and the restroom actor.

56. Wal-Mart disposed of and destroyed this potential evidence.

57. By its conduct, Wal-Mart's sole intent was to disrupt or defeat a potential lawsuit.

58. The destruction or alteration of the evidence may well result in Plaintiff's inability to prove her case and Plaintiff will suffer damages as a result of the destruction or alteration.

59. In the alternative, Plaintiff is entitled to an instruction that the jury is entitled to conclude that the lost, destroyed or altered evidence would be unfavorable to Wal-Mart.

60. Plaintiff is entitled to judgment against the Defendants for compensation for all of her own damages including all past and future medical expenses and non-medical expenses and for the damages David has suffered of past and future pain and suffering, past and future emotional harm and loss of services, and for pre-judgment and post-judgment interest all in an amount to be proved at trial on the merits.

WHEREFORE the Plaintiff prays for judgment against the Defendant for compensatory and consequential damages and for punitive damages in an amount to be proved at trial on the merits, pre-judgment interest and costs incurred herein and such other and further relief as is consistent with the premises herein.

LAW OFFICE OF BRIGITTE LOTZE

Brigitte Ursula Lotze
Jerry J. Hamilton
Attorneys for Plaintiff
P.O. Box 513
Taos, New Mexico 87571
(505) 758-1221